IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CIRCLE R, INC., and THURSTON MANUFACTURING COMPANY, ) ) ) | |
| Plaintiffs, ) ) | 8:08CV337 |
| V. ) ) | |
| KEVIN ROGERS, individually, RALPH ROGERS, individually, CIRCLE R FRAME ALIGNERS, INC., and ASSOCIATED SIDE DUMP DEVELOPMENT, INC., ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. ) ) | |

This matter is before the court on plaintiffs' Motion for Preliminary Injunction ("Motion") (Filing No. 5). The court has reviewed the briefs and evidence submitted by the parties and has listened to the parties' testimony at the hearing held on October 8, 2008. Having reviewed the record, the court concludes that plaintiffs' Motion should be granted in part. Accordingly, for the reasons stated below, the court hereby enjoins defendants Ralph Rogers, Kevin Rogers, Circle R Frame Aligners, Inc. ("Frame Aligners"), and Associated Side Dump Development, Inc. ("SDI") from using Thurston's CIRCLE R trademark, subject of United States Trademark Registration No. 1,917,831, and any confusingly similar designation in connection with the manufacture, advertising, promotion, or offering for sale of any new SDI trailers on the same premises where the CIRCLE R trademark is displayed. Specifically, the court orders defendants Kevin Rogers and Frame

Aligners to remove the sign reading "Circle R Frame Aligners, Inc. DBA/Side Dump Trailer Sales" from the premises of defendants' property. *See* Filing No. 34, Exhibit ("Ex.") C at 4.[1]

**FACTS**

The dispute between the two parties involves the CIRCLE R trademark, U.S. Trademark Registration No. 1,917,831, that plaintiff Thurston Manufacturing Company ("Thurston") purchased from defendant Ralph Rogers pursuant to the Stock Purchase Agreement the parties entered into in November of 1999. *See* Filing No. 34, #9, Ex. A. In addition to the trademark, Thurston purchased Ralph Rogers' company then known as Circle R, Inc. *Id.* Plaintiffs ask that this court enjoin defendants Ralph Rogers, Kevin Rogers, SDI, and Frame Aligners from using the CIRCLE R trademark. *Id.*; Plaintiffs' Brief, Filing No. 6 at 5.

While Thurston purchased the CIRCLE R trademark in 1999, the terms of the Stock Purchase Agreement granted defendants Ralph Rogers and his company, Frame Aligners, some continued but limited use of the trademark. Filing No. 34, #9, Ex. A. Under the terms of the Stock Purchase Agreement, the parties agreed to permit defendants Ralph Rogers and Frame Aligners to continue the use of the CIRCLE R trademark in connection with Frame Aligners' business as it had operated in the past.[2] *Id.* Additionally, under the terms of the Stock Purchase Agreement, defendants Ralph Rogers and Frame Aligners

---

[1] At this point in time, the only evidence before the court of such a violation is the one specifically cited in Filing No. 34, Exhibit ("Ex.") C at 4, where Kevin Rogers and Frame Aligners are offering for sale newly manufactured SDI trailers on premises where the CIRCLE R trademark is displayed. However, this injunction applies to any use of the CIRLCE R trademark on any premises upon which new SDI trailers are offered for sale.

[2] *See* Stock Purchase Agreement, ¶ 4.11(a) (Filing No. 34, #9, Ex. A ) ("Circle owns or has the right to use pursuant to license, sublicense, agreement, or permission all Intellectual Property used in the conduct of its businesses as presently conducted."). At oral argument, the parties represented to the court that this language in the Stock Purchase Agreement allowed Frame Aligners to continue its business of selling and/or repairing used side-dump trailers in conjunction with its use of the CIRCLE R trademark but prohibited the use of CIRCLE R trademark in conjunction with the offering for sale of newly manufactured side dump trailers.

agreed to refrain from engaging in the business of manufacturing new side-dump trailers for a period of five years. In return, Thurston agreed to pay Ralph Rogers $1,000 a year. *Id.*

On February 19, 2002, Ralph Rogers formed Associated Side Dump Development Inc., and began manufacturing side dump trailers under the name Side Dump Industries. Def. Brief, Filing No. 33 at 3-4. SDI manufactures side dump trailers, which are similar to the kind that Thurston produces under the CIRCLE R trademark. Consequently, Thurston and SDI have become direct competitors in the side dump trailer business.

Ralph Rogers sold Frame Aligners to his son, Kevin Rogers, and his wife, Judy Rogers, in October of 2007. *Id.* at 4. Ralph Rogers kept The Truck Shop dealership which he now operates as part of SDI. *Id.* Kevin Rogers obtained his own dealership under the name Side Dump Trailer Sales which he operates as part of Frame Aligners. *Id.*

The record indicates that Kevin Rogers and Frame Aligners are now selling new trailers on premises that display the CIRCLE R trademark. *See* Filing No. 34, Ex. C at 4 (featuring a photo displaying the CIRCLE R trademark and a sign reading "Circle R Frame Aligners, Inc. DBA/Side Dump Trailer Sales"). Plaintiffs have requested that the court enjoin defendants from using the CIRCLE R trademark in this manner.

## DISCUSSION

When considering whether to grant the extraordinary remedy of preliminary injunction, the court must consider four factors: (1) the threat of irreparable harm; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that it will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc).

No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. See *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir.1996); *see also Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987) (noting no single factor in itself is dispositive; however, a party moving for a preliminary injunction is required to show the threat of irreparable harm). The burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits. *Calvin Klein Cosmetics Corp. v. Lenox Lab.*, 815 F.2d 500, 503 (8th Cir. 1987).

**1. Threat of Irreparable Harm**

Plaintiffs have sufficiently demonstrated a threat of irreparable harm because they have shown there is a significant likelihood of confusion between their use of the trademark and defendants' use of the mark. *Calvin Klein*, 815 F.2d at 505 (noting that the court "could presume irreparable injury from a finding of probable success in proving likelihood of confusion."); *see, e.g.,* Filing No. 34, Ex. C at 4 (showing the defendants' display of the CIRCLE R trademark on the same side of a building as a sign reading "Circle R Frame Aligners, Inc. DBA/Side Dump Trailer Sales"). Because "[a]n infringing mark, by its nature, detracts from the value of the mark with which it is confused . . . irreparable harm will be presumed." *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir. 1997).

Plaintiffs, therefore, have successfully established the first of the four *Dataphase* factors, that is, the likelihood that they will suffer irreparable harm in the absence of a preliminary injunction.

### 2. Balance of Harms

In evaluating the balance of harms, the court finds that the harm in denying plaintiffs' request for a preliminary injunction is greater than the harm that would result if the court were to grant plaintiffs' request. The cost to defendants is slight since his court is merely requiring defendants to remove a sign from the side of a building. The court is not requiring defendants to do anything that would result in a substantial cost to defendants or their businesses. The court recognizes that the defendants may incur a financial loss if the removal of the infringing sign results in a loss of name recognition. However, the court concludes that the balance of harms weighs in favor of granting the preliminary injunction. *See* Midway Mfg. Co. v. Dirkschneider, 543 F. Supp. 466, 484 (D. Neb. 1981) (holding that where "evidence suggests that an injunction would have little impact on the defendants' businesses," the balance of harms supports the court's granting of the requested preliminary injunctive relief).

### 3. Probability that Plaintiffs Will Succeed on Merits

The court concludes that plaintiffs have sufficiently established their likelihood to succeed on the merits. "In order to prevail on a trademark-infringement claim, a plaintiff must prove a likelihood of consumer confusion, which is the 'hallmark of any trademark infringement claim.'" Minn. Min. & Mfg. Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (C.A.8 (Minn.) 1997). "In determining whether a likelihood of confusion exists, a court should take the following factors into consideration: 1) the strength of the owner's mark; 2) the similarity between the owner's mark and the alleged infringer's mark; 3) the degree to which the products compete with each other; 4) the alleged infringer's intent to pass off its goods as those of the trademark owner . . . ; 5) incidents of actual confusion; and 6)

whether the degree of purchaser care can eliminate any likelihood of confusion which would otherwise exist." *Id.* "[A]ctual confusion is not essential to a finding of trademark infringement, although it is positive proof of likelihood of confusion." *SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)*.

At this point in time, the court finds the evidence before it supports the conclusion that defendants have violated the Stock Purchase Agreement, and further, the CIRCLE R trademark and defendants' trademark are similar in nature and design. In considering all of the requisite factors, the court finds that there is a sufficient probability of confusion such that plaintiffs have established a likelihood of success on the merits. Plaintiffs list several examples in which consumers have expressed confusion concerning the plaintiffs' and defendants' products and use of the CIRCLE R trademark. *See* Filing No. 6, Affidavit of Ryan Johnson. Because "actual confusion . . . is positive proof of likelihood of confusion," this court concludes that there is a likelihood of confusion sufficient to establish plaintiffs' probability of success on the merits. Furthermore, photographs depicting defendants' use of the CIRCLE R trademark in conjunction with the sale of new side dump trailers provides ample evidence of a likelihood for confusion. *See* Filing No. 34, Ex. C at 4 (displaying photographs of defendants' use of the trademark in conjunction with a sign that reads "Circle R Frame Aligners, Inc. DBA/Side Dump Trailer Sales"). The court finds the similarity between Thurston's trademark and the trademark employed by defendants is substantial, and further, it is significant that defendants are now using the trademark to sell *new* side dump trailers–thus increasing the degree to which the products compete with one another.

Accordingly, the court concludes that plaintiffs have met their burden of establishing a likelihood to succeed on the merits.

**4.  Public Interest**

Finally, the court's grant of a preliminary injunction in this matter will serve the public interest, as "[t]he public interest supports issuing a preliminary injunction to protect consumers." *MSP Corp. v. Westech Instruments, Inc.*, 500 F. Supp.2d 1198, 1218 (D. Minn. 2007).  "Infringement and dilution of trademarks are inherently contrary to the public interest." *Am. Dairy Queen Corp. v. New Line Prods., Inc.,* 35 F. Supp.2d 727, 733 (D. Minn. 1998).  The court finds that the granting of a preliminary injunction will protect consumers from confusion and will thereby serve the public interest.

For the aforementioned reasons, the court grants plaintiffs' Motion for Preliminary Injunction in part.  Accordingly,

IT IS ORDERED:

1.  Plaintiffs' Motion, Filing No. 5, is granted in part to the extent that defendants Ralph Rogers, Kevin Rogers, Frame Aligners, and SDI are enjoined from using Thurston's CIRCLE R trademark, subject of United States Trademark Registration No. 1,917,831, and any confusingly similar designation in connection with the manufacture, advertising, promotion, or offering for sale of any new SDI trailers on the same premises where the CIRCLE R Trademark is displayed.

2.   Further, defendants are enjoined from displaying the CIRCLE R trademark on any premises where newly manufactured SDI trailers are sold.

3.   Specifically, defendants Kevin Rogers and Frame Aligners are ordered to remove the sign reading "Circle R Frame Aligners, Inc. DBA/Side Dump Trailer Sales" from

the premises of defendants' property, Filing No. 34, Ex. C at 4, within five days from the date of this order.

    4.   Plaintiffs' Motion is denied at this time in all other respects.

DATED this 16th day of December, 2008.

                        BY THE COURT:

                        s/ Joseph F. Bataillon
                        Chief District Judge